UNITED STATES *v.* SAUNDERS (No. 1773).   SAUNDERS *v.* UNITED STATES (No. 1781).[1]

1. EVIDENCE OF COMPLIANCE WITH ARTICLE 570, CUSTOMS REGULATIONS OF 1908—PRESUMPTION IN FAVOR OF BOARD.

When a witness before the Board of United States General Appraisers testified that the exporter's declaration was filed, as provided for in article 570 of the Customs Regulations of 1908, as amended by T. D. 32388 (art. 333, Customs Regulations of 1915), and no objection was made to this method of proving the fact of filing, this court, upon objection being made to the consideration of the appeal on the ground that the declaration is not in the file, is unable to say that there was not sufficient evidence to justify the finding by the board that the declaration was filed at the time of entry.

2. CONSTRUCTION, ARTICLE 572, CUSTOMS REGULATIONS OF 1908.

In view of the requirement of article 572, Customs Regulations of 1908, that "if the merchandise be returned to the port of original exportation, outward shipment must appear from the records of the customhouse at that port," in connection with proof that the reimportation was made at the port of exportation, the certificate of exportation was unnecessary, since to require its production would be to require proof to the collector of the records of his own office.

3. REIMPORTATION—TIN-PLATE DISKS—BY-PRODUCT.

Disks of tin plate, about 2 inches in diameter, the by-product of the manufacture in Canada of cans from tin plate imported from the United States, are entitled to entry free of duty under paragraph 404, tariff act of 1913, as reimportations not advanced in value or improved in condition.

### United States Court of Customs Appeals, April 23, 1917.

CROSS APPEALS from United States Board of General Appraisers, Abstract 40192.

[Modified.]

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* and *J. Stuart Tompkins* of counsel) contra.

---

[1] T. D. 37200 (32 Treas. Dec., 564).

[Oral argument February 15, 1917, by Mr. Hanson and Mr. Tompkins.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

There are three protests involved in this case, which are numbered, and for convenience we use the number of the protests in discussing the issues. They are, respectively, 721812, 727149, and 751473. Some of the importations were made under paragraph 500 of the act of 1909 and some under paragraph 404 of the act of 1913.

The first of these protests presents the issue, which will be stated later, on the merits, and presents no issue as to compliance with the departmental regulations on entry.

As to the other two protests, the Government contends that the regulations were not complied with. This regulation consists of article 570 of the Customs Regulations of 1908, as amended by T. D. 32388, and reads as follows:

There shall be filed with the entry a declaration made by the foreign exporter of the goods before the United States consul, stating that the merchandise was imported from the United States, and that it was not advanced in value or improved in condition by any process of manufacture or other means while abroad, and also an oath or declaration of the owner, importer, consignee, or agent on form Cat. No. 3311. Where the value exceeds $100 and the appraising officer's report does not show affirmatively that the merchandise returned is of American manufacture or production, the collector and naval officer, if any, may require the importers to furnish, in addition to the affidavit filed on entry, form Cat. No. 3311, the personal oath of the actual owner or ultimate consignee, or such other evidence as may, in their opinion, be sufficient to establish the identity of the returned merchandise as of American manufacture or production, within three months from the date of demand therefor, and shall suspend the liquidation of the entry until the required oath or other evidence is furnished or until the expiration of the three months' period. In such cases the collector shall require before the release of the examination packages the deposit of an amount sufficient to cover the estimated duties. The said oath shall contain the name of the exporter, name of the exporting conveyance, date and port of exportation, and the marks and numbers of the packages, or so much thereof as in the discretion of the collector or naval officer, if any, may appear necessary for the purpose of identification of the returned merchandise. If the importer shall fail to produce such oath or other evidence within the time specified the entry shall be liquidated as dutiable.

As to protest No. 727149 the board overruled the objections of the Government and held that compliance with the regulations had been sufficiently shown. The point raised by the Government is that no declaration of the foreign shipper is present with the papers to show compliance with the regulations. The importer on the hearing before the board offered the testimony of William A. Bird, a customs broker, who testified as follows:

Q. At the time of making the entry on December 6, 1913, did you file the exporter's declaration and also the affidavit of the owner of the merchandise claiming the goods free as American goods returned?—A. I did; yes, sir.

   *        *        *        *        *        *        *

Q. (By Mr. BALDWIN.)   Those documents are here, are they?—A.  Yes, sir.

\*          \*          \*          \*   •          \*          \*          \*

Q. (By Mr. TOMPKINS.) Am I correct in understanding these certificates or declaration of foreign shipper and the oath or declaration of the importer were filed by you with the entry in accordance with section 333 of the customs regulations?—A.  Yes, sir.

Q. Is it a condition precedent to making such free entry that such oaths or declarations should be filed with the entry?

Mr. BALDWIN. Oh, that I object to.  The regulations speak for themselves.

General Appraiser MCCLELLAND. He is talking about the practice of the collector's office.

A. Absolutely; yes, sir.

No objection to the method adopted of proving the fact of filing these papers with the collector appears to have been made, and the board found that the requirements of the regulations were met.  We are unable to say, therefore, that there was not evidence sufficient to justify a finding by the board that although the declaration of the foreign shipper may not have been present in the files it was nevertheless filed at the time of the entry.

As to the protest No. 751473 the board held that the evidence of exportation from the United States required by the customs regulations does not appear to have been present at the time of entry. This holding should be construed in connection with the precise issue presented to the board by the Government at the hearing before the board.  This appears by the objection of counsel for the Government, stated as follows:

Before we begin to take the testimony I would like to make some preliminary statements in connection with the regulations.  These are all claimed to be American goods returned under paragraph 404.  \* \* \*  As to protest 751473 the regulations have not been complied with in that there is no certificate whatever of exportation from the United States.

It is evident that the failure to produce such a certificate of exportation was the ground upon which the entries covered by this protest were held not to have been made in accordance with the regulations. But article 572 of the regulations in regard to evidence of exportation reads as follows:

If the merchandise be returned to the port of original exportation, outward shipment must appear from the records of the customhouse at that port except in the case of exports to Canada by ferryboat, and if to a port other than that of original exportation there shall be required a certificate from the collector and naval officer, if any, of the port where the exportation was made showing the fact of exportation from that port.

The certificate in the case of importation to a port other than that of exportation was evidently the certificate deemed to be, wanting by the Government's counsel in the objection made.  The proof offered by the affidavits of Davis and Simpson showed that the goods were in fact exported from the same port at which they were reimported.  With these facts before the collector, it would seem not

to have been necessary to offer in evidence before him the records of his own office.

We think the distinction must have been overlooked by the board, and that all three of the protests should be considered as presenting the meritorious question involved, which is whether these small pieces of tin plate exported from the United States and returned to the United States in the form of small disks 2 inches in diameter, the disks having been produced as a by-product of the manufacture in Canada, are to be admitted under the applicable paragraph as American goods returned, not advanced in value or improved in condition.

The board held as to this contention with the importer and sustained two of the protests, but overruled the protest in No. 751473 upon the ground stated above.

As stated by the board below, if the question were a new one there might be some doubt as to whether the provision of the statute should be held broad enough to cover goods reimported in any different form or condition than when exported. But the question is not new and the provisions in question in this case were adopted after judicial interpretation of previous statutes, and presumptively in reaffirmance of the rule laid down by the Board of General Appraisers in the earlier decisions.

The case T. D. 26865, In re protest of Beck, contains a discussion of the authorities. This case laid down the rule that where merchandise was exported from the United States in the form of hoop or band steel and returned to the United States as scrap steel, it should be held free of duty as articles the growth, produce, or manufacture of the United States under the provisions of paragraph 483 of the act of 1897.

In this case attention was called to the fact that there had been a change of the phraseology of paragraph 493 of the tariff act of 1890 from the corresponding paragraph of the preceding tariff act of 1883. Paragraph 649 of the act of 1883 provided for the free importation of articles the growth, produce, and manufacture of the United States *which had been returned in the same condition as exported.* The acts of 1890 and of 1897, which were alike in this respect, provided for free entry under certain conditions of articles the growth, produce, and manufacture of the United States when returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or other means, and it was said in that case of the scrap steel under consideration that "it has clearly not been advanced in value or improved in condition, but rather depreciated by the process of manufacture."

The same form of enactment was continued in 1909 and 1913, and it may be said of the material here in question, as was said in that

case, that the tin disks under consideration have not been advanced in value or improved in condition, but rather depreciated by the process of manufacture. We think that any other view that might be taken of this subject is precluded by the legislative adoption of the rule which was laid down in the case cited as early as 1905, and it has not since been departed from. See Seeberger *v.* Castro (153 U. S., 32).

The decision of the board is affirmed as to protests Nos. 721812 and 727149 and reversed as to No. 751473, and the protest in each of the cases is sustained.

*Modified.*

### DISSENTING OPINION.

SMITH, Judge, dissenting: I regret exceedingly that I find myself unable to concur in the majority opinion in this case. It appears from the record that tin plate, a product and manufacture of the United States, was exported to Canada, where it was converted into cans for holding vegetables. In the making of the cans, flat, circular pieces of tin of uniform size were cut out of the strip designed to form the top, and these tin disks, if they may be so called, constitute the merchandise returned, which the importer claims is entitled to free entry under that part of the tariff act of 1913 which reads as follows:

(Free list.) That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States, * * * be exempt from duty * * *.

404. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * *.

The disks are chiefly used in this country for the making of the tops and bottoms of cylindrical snuff boxes. They are also employed as roof caps to hold roofing in place, and are sometimes crimped into toy dishes for children.

As I see the case, the article which left the United States was tin plate available for all the manufacturing purposes to which tin plate may be devoted, and what came back was tin disks, a material which, in my opinion, is not tin plate at all, but a product of tin plate, or, if you will, a by-product, inasmuch as the disks incidentally resulted from the manufacture of cans. But whether they be regarded as a product or a by-product of tin plate, the fact remains that they were evolved from tin plate by manufacturing or other means and are adapted to uses and purposes for which the tin plate exported was wholly unfitted unless further so processed as to bring it to the shape and size required by the intended use.

The tin disks are worth less per pound than was the tin plate out of which they were made, and consequently it must be admitted that the disks, considered as tin plate, have not been advanced in value. From that fact, however, it does not follow at all that the tin disks were not an improved condition of the tin plate. To bring tin plate to the form and size required for roof caps or for the tops and bottoms of snuff boxes or for the manufacture of children's dishes, would necessarily require that the tin plate be subjected to appropriate manufacturing processes, and whatever might be the value of the result of such processes it is manifest, at least to me, that the tin plate has been brought to a condition which fits it for certain definite purposes and therefore necessarily improves the condition of the tin plate for those purposes, and improves it because the tin plate could not be used for such purposes unless first brought to a particular form and size.

In the matter of John J. Beck (T. D. 26865), cited in the majority opinion, the Board of General Appraisers did hold that scrap resulting from the manufacture in Canada of American hoop steel was entitled to free entry. In that case the hoop steel exported came back in the form of scrap and therefore on importation it was not in the condition which it had on exportation. Hoop steel in the form of scrap did not represent a stage in the manufacture of any particular article or articles and therefore could not be said to have been improved in condition. Upon the fact that the steel was scrap and not in the same condition as the steel exported the Government in that case builded its contention that the scrap was not entitled to free entry. That contention, of course, could not be sustained, because, as General Appraiser Somerville carefully pointed out, the statute did not require the return of the American product in the *same* condition, but its return without being advanced in value or *improved* in condition. That case, as I read it, had no application to the merchandise here involved, which, although it is not advanced in value, is certainly in a better condition for the purposes for which it is to be used than was the tin plate which was exported. I am therefore of the opinion that the decision of the board should be reversed and not affirmed.

MARTIN, Judge, joins in this dissent.