(C. D. 1479)

V. A. LESSOR & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 28, 1952)

Lawrence, Tuttle & Harper (George R. Tuttle of counsel) for the plaintiff.
Charles J. Wagner, Acting Assistant Attorney General (Dorothy C. Bennett, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This action involves the collector's assessment of duty under the provisions of paragraph 1109 (a) of the Tariff Act of 1930 upon certain filter press cloth imported from Mexico. The plaintiff does not question the applicability of said paragraph to such class of foreign merchandise but contends that the importation consists of American manufactures which have been returned to the United States and, therefore, are entitled to an exemption from duty under the provisions of paragraph 1615 of the Tariff Act of 1930, as amended by section 35, Customs Administrative Act of 1938.

The entry papers disclose that there were 20 rolls of filter press cloth covered by the importation. A declaration of the foreign shipper on customs Form 129, and an affidavit of the customs broker, the importer of record, on customs Form 3311, were filed upon entry in accordance with the regulations. The customs examiner in his return upon the invoice stated that 10 of the rolls were marked "Made in U. S. A.," 2 rolls were marked "Product of Cuba," and the remaining 8 rolls bore no marks of identification. The collector admitted the 10 rolls returned as marked "Made in U. S. A." without the payment of duty under paragraph 1615, as amended, supra, and assessed duty upon the remaining 10 rolls, the subject of this action.

At the trial, certain documents were produced purporting to be the evidence furnished the collector to establish the American origin of the goods. These were marked collective exhibit 1 for identification. These documents were later admitted in evidence over Government objection as exhibits 1–A and 1–B. The customs broker making the entry testified that exhibits 1-A and 1–B, upon which entry was made as American goods returned, were supplied by the Mexican shipper. Upon the basis of such evidence, she declared on entry that the 20 rolls the subject of the importation were purchased in the United States and shipped to Mexicali, Mexico; that 15 thereof were exported October 25, 1943, and 5 rolls on March 11, 1943. However, a certificate of exportation on customs Form 4467 was admittedly not filed. The reason given for not filing same was that the merchandise had been exported from the port of Calexico and returned thereto, and there was no point in filing the certificate. However, according to the witness, the records at that port covering 1943 exports had been

destroyed, as the practice was to keep records available only during a period of 5 years. Therefore, the merchandise exported more than 5 years previous to the importation thereof did not appear upon the customhouse records, and it became impossible to supply the information. Exhibits 1–A and 1–B, the documents presented to the collector to substantiate the record evidence of exportation from the United States, consist, respectively, of a bill of Swiff-Train Co., Inc., dated October 14, 1943, covering 15 rolls of white wool press cloth, and a freight bill, dated March 11, 1943, covering 5 rolls of filter press cloth.

The general manager of the Mexican shipper testified that when the Mexican company was organized in 1940, it used a type of hydraulic press which required the filter press cloths in question. A new machine, acquired in 1947, eliminated the need for the use of press cloths. While operating the old press, the witness stated that the company was continuously purchasing press cloths and a few rolls were still on hand which the company sought to sell when the use thereof was no longer required.

The witness testified further that if "I remember right" *the 20 rolls of press cloth in question were purchased in 1944.* He could not remember whether or not he furnished the customs broker with any export data. He testified that the merchandise was all purchased in the United States. In accounting for the two rolls marked "Product of Cuba," the witness stated:

A. Well, maybe because we buy from the United States and this burlap bag is not brand new, so we have to use; and we buy from the United States, and these are not brand new, they are second-hand sugar bags, or something, used for coffee, or something, and they came from different, I mean, they came into the States from different places.

Q. Yes—A. And we might, when we tried to prepare those to send back to the States, any of the boys, what you call wrap it and send it back.

The witness further testified that he purchased the press cloth sold to the American buyer from Swiff-Train, located in Corpus Christi, Tex., and it was shipped through Calexico because of a draft which had to be paid at that point. When shown collective exhibit 1 for identification, the witness stated that those papers cover the same merchandise the subject of this action. When cross-examined relative to the witness' identity of the merchandise covered by the papers with the imported merchandise and asked as to his basis of belief that they are the same rolls, he testified:

A. Because we paid for those imports, we had the cloth in our warehouse, and we sent them back when we sold into the United States.

Q. But you purchased a quantity of Press Cloth in the United States during the years '43 and '44 and '45, didn't you?

\*    \*    \*    \*    \*    \*    \*

A. We kept using it, and then what we sold to the States was surplus we had.

\*    \*    \*    \*    \*    \*    \*

Q. Well, can you give an approximation about how many rolls of Press Cloth you bought during the year 1943 and '44?—A. Well, I can't say.

Q. Just at an approximation.—A. 20, 25.

Q. 20 or 25 rolls during 1943?—A. Yes.

Q. And how much during 1944?—A. I really can't tell you by memory.

Q. Well, let us say how many rolls did you usually have on hand during those years that you purchased in the United States.—A. 20, 25.

Q. You purchased regularly every year?—A. Yes.

Q. For how many years?—A. Oh, for 6 years, 1940 until 1947, when we changed our system, our machinery.

Q. Well, then what makes you state that the particular 15 rolls covered by these photostats were the 15 rolls that came into this country in 1949?

JUDGE EKWALL: 20, isn't it?

BY MRS. BENNETT:

Q. 20.—A. We had a surplus in our warehouse, and we have no use for it.

JUDGE EKWALL: No, but she wants to know what makes you think that these particular rolls represented by these documents were the ones that you sent back to the United States.

THE WITNESS: Because we don't buy from any other part, but the ones we buy are from the States, the same material.

BY MRS. BENNETT:

Q. But they might just as easily have been 20 rolls which you brought into the country in 1944, couldn't they?—A. Well, as I say, we keep using them every year.

Q. You were using them regularly?—A. Yes, for about 6——

The witness further testified that the filter press cloth covered by the freight bill, exhibit 1-B, was purchased from the Oriental Textile Co. located in Corpus Christi. He did not know why it was shipped from Houston. The witness stated, concerning exhibit 1-A, that it merely shows the method by which his firm paid for the 15 rolls of press cloth; that it does not show when the rolls were shipped.

It was on the basis of the foregoing testimony, the Government counsel objected to the admission in evidence of collective exhibit 1 for identification as not having been properly connected with the importation in question and as not showing that an exportation thereof had been made of such merchandise covered thereby. The objection was overruled. The court is of the opinion that the exhibits (1-A and 1-B) are admissible inasmuch as they are a part of the evidence presented to the collector. However, we find them to be of little evidential value in establishing before the court that the goods in question were exported from the United States in 1943.

A Mexican customs broker testified for plaintiff that he endeavored to locate records of the importation into Mexicali from Calexico of press cloth, but the records of the customhouse there were kept only for 4 years; that his own records were kept only for 5 years; and that he was unable to find any records covering the merchandise in question.

The customs official handling the entry in question testified for the Government that he had full authority to waive production of official record evidence of previous exportation for purposes of paragraph 1615 and a carbon copy of such authorization, extracted from the official files, was admitted in evidence as collective exhibit 2. The witness testified further that he waived evidence of exportation on 10 rolls of the shipment of press cloth, which were marked to indicate that they were made in the United States, upon the authority of the customs examiner's official return with the papers.

The witness further testified that the customs records at the port of entry covering exportation during the year 1943 had been destroyed and that he assessed duty upon the 10 rolls of press cloth in question because of the report that 2 rolls were marked "Product of Cuba" and the 8 rolls were not marked as to country of origin and for the additional reason that there was no supplementary evidence presented satisfactory to the collector establishing that the 10 rolls were products of the United States. He did not consider the freight bill and one invoice on two different lots of merchandise sufficient to justify admitting the 10 rolls in question to free entry as being of American manufacture.

Upon cross-examination, the witness testified that the only evidence of exportation from Calexico was a statement on the entry documents presented by the customhouse broker and that there was no evidence of any export declarations and none were on file at the customhouse for that period, such having been previously destroyed. The witness testified that proof of the nonpayment of drawback was waived on the rolls of filter press cloth reported as of American manufacture, as he could not recall any export of drawback merchandise; that outside of the lack of markings to indicate the country of origin as the United States, his reason for not allowing an exemption of duty under the American-goods-returned paragraph for the filter cloth in question was because of the lack of supplementary evidence satisfactory to the customs office that the merchandise was exported from the United States, and because he had no actual knowledge of the point of exportation, whether it was the port of entry in the United States or not.

Paragraph 1615 of the Tariff Act of 1930, as amended by section 35 of the Customs Administrative Act of 1938, provides as follows:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

\* \* \* \* \* \* \*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

The Customs Regulations of 1943 provide as follows:

**10.1 Requirements on entry.**—(a) The following documents shall be filed in connection with the entry of articles claimed to be free of duty under paragraph 1615, Tariff Act of 1930, as amended:

(1) A declaration of the foreign shipper on consular Form 129 (Invoice of Returned American Goods and Declaration of Foreign Exporter) certified by the American consular officer, if the value exceeds $100. An invoice on consular Form 138 shall not be required if consular Form 129 is filed within the period provided for in these regulations.

(2) An affidavit of the owner, importer, consignee, or agent on customs Form 3311.

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. This certificate shall be issued on application of the importer, or of the collector at the importer's request, and shall be mailed by the issuing officer directly to the port at which it is to be used. *If the merchandise has been exported from the port at which entry is made and the fact of exportation appears on the records of the customhouse, the fact of reimportation shall be noted on such export record but the filing of the certificate on Form 4467 shall not be required.* [Italics not quoted.]

**10.2 Waiver of evidence.**—(a) *The collector may waive record evidence of exportation* and the declaration of the foreign shipper on consular Form 129 provided for in section 10.1 (a) (1) *if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of the merchandise under paragraph 1615, Tariff Act of 1930, as amended is dependent,* * * * [Italics not quoted.]

Counsel for the plaintiff urges that the importer fully complied with the customs regulations as far as it was possible to do so; that the importer was not obliged to file the certificate of exportation because the Government's records of export had been destroyed and, further, because of the fact that the merchandise was reimported at the port of exportation. Counsel for the plaintiff contends that the only point at issue, therefore, is whether there has been a satisfactory identification of the 10 rolls of press cloth in question. In that respect, counsel for plaintiff makes frequent reference to the collector's acceptance of 10 rolls of the merchandise imported as being of American origin and his waiver of the evidence of exportation thereon and his allowing exemption from duty. Such action of the collector as to the 10 rolls cannot be regarded as sufficient to allow an exemption from duty upon the remainder of the goods, even though the evidence record of exportation is the same in both instances. Whether or not the collector abused the discretion granted him in the statute, in granting an exemption from duty respecting such 10 rolls, is not here before us and no opinion will be expressed thereon.

Counsel for the plaintiff relies upon the cases of *Pickfords Colonial, Inc.* v. *United States,* 60 Treas. Dec. 1451, Abstract 18266; *United States* v. *Saunders,* 8 Ct. Cust. Appls. 82, T. D. 37200; *Pensick & Gordon* v. *United States,* 8 Cust. Ct. 518, Abstract 47186; *Union Oil*

*Co.* v. *United States*, 65 Treas. Dec. 1455, Abstract 27727; *Minneapolis Barrel & Bag Co.* v. *United States*, 51 Treas. Dec. 187, T. D. 42006; *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047; and *Fairbanks Morse & Co.* v. *United States*, 69 Treas. Dec. 513, T. D. 48217.

The cases of *Pickfords Colonial, Inc.*, and *Union Oil Co.*, before this court, and the *Saunders* case, before the appellate court, involved goods exported and returned through the same port where the identity of the goods exported and returned was established, and the certificate of export was held not necessary in view of substitute evidence of the facts therein required. In the *Minneapolis Barrel & Bag Co.* case, involving a fire in the customhouse, the court accepted landing certificates executed by the Canadian Government as proof of the fact of exportation from said port. The *Coastwise Steamship & Barge Co.* case involved the impossibility of filing an export certificate, and in the *Fairbanks Morse & Co.* case the article was held to be a nonimportation inasmuch as there was no exportation. None of these cases cited by the plaintiff are in point unless it is established first, that the goods imported were the identical goods exported, and second, that the goods were exported through the same port at which imported.

In the brief of counsel for the Government appear significant facts relative to the weight of the 20 rolls of filter press cloth on the invoice and that covered by the exhibits in evidence as follows:

Moreover, when Collective Exhibits 1–A and 1–B are considered together, there is one outstanding circumstance which raises a strong presumption that the 15-roll and 5-roll lots therein described are *not* the 20 rolls of cloth covered by the shipment described in the instant entry. In this connection, it will be noted that the total weight of the 20 rolls covered by Exhibits 1–A and 1–B is 10,427 pounds, whereas the total *net* weight of the 20 rolls in the instant importation is shown on the invoice and entry, and also in the examiner's red-ink return, as 11,530 pounds. It thus appears that the total weight of the 20 rolls of cloth covered by the invoice and freight bill, Collective Exhibits 1–A and 1–B, is *1,103 pounds less* than the total *net* weight of the 20 rolls of cloth in the instant importation. [Italics quoted.]

The Government, therefore, urges that such difference of over 1,000 pounds is sufficient to destroy any presumption that the goods mentioned in the exhibits are identical with the goods in the entry in question.

Counsel for the Government further urges that inasmuch as the evidence shows that the exporter of the goods from Mexico purchased from 20 to 25 rolls of filter press cloth each year during the years 1943, 1944, 1945, 1946, and 1947, and usually retained 20 to 25 rolls on hand, the 20 rolls on hand when the presses were changed in 1947 might very well be the rolls purchased in later years, when presumably the records of the customhouse were available, rather than in 1943. The collector at the port of entry had not yet destroyed his export records for the year 1944 up to and including 1947 and could have

furnished "record evidence" of any exportations of press cloth made through his port during those years.

In the case of *Richard Ullrich* v. *United States*, 67 Treas. Dec. 959, T. D. 47759, the court held, as stated in its syllabus, that—

The mere fact that certain customs records might have been destroyed, without any offer affirmatively to prove by other evidence the facts alleged to have been contained therein, would not establish the fact that the plaintiff had complied with the requirements of said paragraph 1615.

In the case of *Chas. P. Hull*, brought before the Board of General Appraisers, published in 38 Treas. Dec. 876, Abstract 43666, according to the opinion written by General Appraiser Hay, where the regulations as to documentary evidence had been complied with, the protest against the collector's decision was overruled for the reason that the collector did not find the compliance with the regulations sufficient to convince him that the merchandise was of American origin, and satisfactory evidence of that fact was not produced before the board. Abstract 43666 was affirmed in *Hull* v. *United States*, 10 Ct. Cust. Appls. 211, T. D. 38556.

A careful consideration of the evidence fails to disclose whether the 10 rolls in question here out of the 20 rolls imported were exported from the United States to Mexico in 1943, as claimed, or in 1944, as testified to by the Mexican exporter, or in any one of the years in which press cloth was purchased in the United States for export. If exported in 1944 or later years, record evidence would be on file at the customhouse. Plaintiff made no attempt to have such records still in the files produced but relied rather upon the claim that the goods were a 1943 export, concerning which the files were not in existence.

There is nothing in the record to establish that the 10 rolls of press cloth in question were ever exported through the port of Calexico, Calif., the port of entry herein. It is obvious that exhibits 1–A and 1–B do not cover the rolls of press cloth imported, when it is considered, as pointed out by Government counsel, that the weights reported on the invoice differ from those in the exhibits as the weight of the merchandise by more than 1,000 pounds. Also, it appears unlikely that the returned unused portion of the press cloth would represent a 1943 exportation from the United States rather than one made in the latter years, particularly when it was shown that 20 to 25 rolls were exported to Mexico each year and that such was the quantity used by the exporter of the goods. Even if the press cloths were purchased in 1944, as the testimony shows, the documentary evidence in question does not cover the imported merchandise.

Moreover, if the press cloths were not exported through the port of Calexico, a certificate of exportation becomes one of the mandatory requirements of the statute. We are, therefore, of the opinion that

the importer has failed to establish the identity or previous exportation of the merchandise, as claimed by the Government. Not only has the plaintiff failed to establish that there was an impossibility of compliance with the regulations respecting the production of the certificate of exportation, but he has also failed to establish that these 10 rolls of press cloth consist of American goods exported and returned to the United States. For all that appears of record, plaintiff has failed to comply with the mandatory requirements of the statute by filing a certificate of exportation.

Judgment will therefore be entered in favor of the Government.