MI-SCOTT INTERNATIONAL LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 87–03–00457

OPINION

(December 20, 1989)

*Sandler, Travis & Rosenberg (Ellen Rubin)* for the plaintiff.

*Stuart M. Gerson,* Assistant Attorney General; *Joseph I Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice *(Nancy M. Frieden),* for the defendant.

BACKGROUND

MUSGRAVE, *Judge:* On February 11, 1986, Mi-Scott International Ltd., Inc. ("Mi-Scott") entered into the port of Miami (on entry number 86–197573–0) 5,691 dozen Mennen toiletry products. The goods were imported duty-free as American goods returned from Singapore, pursuant to item 800.00 TSUS (1986).

Together with the entry, plaintiff presented to the U.S. Customs Service of the Department of the Treasury ("Customs") a declaration from the foreign shipper certifying that the imported goods were made in the United States, and were exported from the United States on December 19, 1985. They also presented Customs with a "Certificate of Origin/Process"[1] attesting that the goods were made in the United States.

The subject shipment was released by the U.S. Food and Drug Administration on February 7, 1986, and by Customs on February 20, 1986.

On February 20, 1986, Customs also issued a "Notice of Redelivery/Markings, Etc." for this entry. The notice stated: "Merchandise must be marked in English to show country of origin. Distribution point is not adequate." Plaintiff's Exhibit C.

The importer did not receive a copy of this notice until February 27, 1986, after the goods had left Miami and been shipped to its customers in New York. Plaintiff's Exhibit E.

On March 21, 1986, Customs informed Mi-Scott that "Mennen products are manufactured in countries other than the U.S. You must provide proof of U.S. manufacture or CF–4647 is still valid and merchandise must be marked." Plaintiff's Exhibit F.

On March 27, 1986, Customs issued a Notice of Action to plaintiff, advising that the entry was liquidated as fully dutiable under item 461.40 TSUS because "no proof of U.S. manufacture [was] provided." Plaintiff's Exhibit G.

Mi-Scott filed a protest on July 2, 1986, accompanied by exhibits that purported to establish the U.S. origin of the merchandise. The protest was denied on January 6, 1987 on the grounds of "insufficient evidence submitted to support claim." Based upon these undisputed facts, the parties have interposed cross-motions for summary judgment.

DISCUSSION

Merchandise entered into the United States as "American goods returned" under item 800.00 TSUS must meet the requirements on entry as provided in 19 C.F.R. § 10.1(a) (1988). The TSUS provision reads:

*Schedule 8. Special Classification Provision:*

Part 1. Articles Exported and Returned:

---

[1] The source of this document, and the identity of the issuing authority, is unclear.

800.00   Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process or manufacture or other means while abroad.

The Code of Federal Regulations provides in pertinent part as follows:

### § 10.1   Domestic products; requirements on entry.

(a) Except as otherwise provided in this part, the following documents *shall* be filed in connection with the entry of articles claimed to be free of duty under item 800.00 and item 805.00, Tariff Schedules of the United States;

(1) A declaration by the foreign shipper * * *

(2) A declaration for free entry by the owner, importer, consignee, or agent on the top portion of Customs Form 3311.

(3) A Certificate of Exportation on the bottom portion of Customs Form 3311 executed by the district director at the port from which the merchandise was exported. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. This certificate shall be issued on application of the importer, or of the district director at the importer's request, and shall be mailed by the issuing officer directly to the port at which it is to be used. If the merchandise has been exported from the port at which entry is made and the fact of exportation appears on the records of the customhouse, the fact of reimportation shall be noted on such export record. In such case the filing of the certificate on Customs Form 3311 shall not be required.

19 C.F.R. § 10.1(a) (emphasis added).

It is the latter subsection, § 10.1(a)(3), which bears most directly on the issue involved in the instant case: whether the importer satisfied the requirements of 19 C.F.R. § 10.1(a), establishing that the imported merchandise consists of American goods returned and qualifies for duty-free entry under item 800.00 TSUS, or whether the presumption of correctness of the government's classification should stand, with the merchandise thus liquidated under item 461.40 TSUS.[2]

To summarize § 10.1(a)(3), an importer is required to file three documents to support a claim of duty exemption: a declaration by the foreign shipper if the article exceeds $1,000; a declaration on Customs Form 3311 by the owner, agent, importer or consignee; and a Certificate of Exportation executed by the district director at the port from which the American-made merchandise was initially exported. *See Border Brokerage Co.* v. *United States*, 59 Cust. Ct. 289,

---

[2]The claim for marking duties, although not specifically raised by plaintiff, will presumably be resolved by disposition of the classification issue. The liquidated damages for failure to redeliver the merchandise were paid, and plaintiff advances no claims with respect thereto.

291, C.D. 3143 (1967); Sturm, *Customs Law and Administration*, § 55.1 at 1–2. The only flexibility in these requirements concerns merchandise reimported through the port of initial exportation. Where such occurrence is noted in the Customs records, then compliance with the last provision—the filing of the export certificate on Customs Form 3311—is waived. Otherwise, the provisions are couched in *mandatory* terms.

Although a declaration by the foreign shipper and an affidavit on Customs Form 3311 by the importer were presented to Customs at the time of entry, plaintiff substituted a "Certificate of Origin/Processing" (supposedly indicating that the goods were made in the U.S.) in lieu of the "Certificate of Exportation" on Form 3311. Mi-Scott claims these documents sufficiently support their claim for duty-free entry. These documents, they argue, establish that the subject merchandise was of American origin.

Plaintiff concedes that a Certificate of Exportation was not filed, as required by the regulation. However, where other evidence establishes the identity of the merchandise as American goods in the absence of a certificate, free entry will be granted, according to Mi-Scott. They rely on *Nanco, Inc.* v. *United States*, 40 Cust. Ct. 366, C.D. 2007 (1958), and *United States* v. *Coastwise Steamship and Barge Co.*, 9 Cust. Ct. App. 216, T.D. 38047 (1919) to sustain this proposition.

The government counters this assertion by noting, first, that statutes granting duty-free entry are to be strictly construed. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 CCPA 5, 8–9, T.D. 48976 (1937); *McDonnell Douglas Corp.* v. *United States*, 75 Cust. Ct. 6, 14, C.D. 4604 (1975). 19 C.F.R. § 10.1 is such a statute, and its provisions regarding which documents an importer must present to qualify for duty-free entry should be strictly read, argues Customs.

The government also relies on General Headnote 11, TSUS, to support its position.[3]

Customs maintains that where the returned merchandise is not imported through the original port of exportation, the filing of a Certificate of Exportation is mandatory, as noted in 19 C.F.R. § 10.1(a)(3). *See also V.A. Lessor & Co.* v. *United States*, 29 Cust. Ct. 258, 263, C.D. 1479 (1952).

Because the Certificate of Exportation on Customs Form 3311 was left completely blank in this case, and proving U.S. origin through other satisfactory evidence was not warranted, the government insists that the statutory mandate requiring a fully executed export certificate has not been met. Even if the alternative evidence

---

[3]General Headnote 11 provides:
    11. *Issuance of rules and regulations.* The Secretary of the Treasury is hereby authorized to issue rules and regulations governing the admission of articles under the provisions of the schedules. The allowance of an importer's claim for classification under any of the provisions of the schedules which provide for total or partial relief from duty or import restrictions on the basis of facts which are not determinable from an examination of the article itself in its condition as imported, *is dependent upon his complying with any rules or regulations which may be issued pursuant to this headnote.* (Emphasis added).

to support the claim of U.S. origin were considered, the American origin of the imported products has not been established by the documents submitted. Therefore, Customs argues that their classification should be upheld because the presumption of correctness has not been overcome.

Resolution of this dispute hinges on whether the holdings of *Nanco* and *Coastwise Steamship* should control here. An analysis of those opinions, which allowed other documentary evidence to establish the U.S. origin of returned goods where the Certificate of Exportation was not filed, is thus critical to the disposition of Mi-Scott's claim.

In *Coastwise Steamship,* 9 Cust. Ct. App. 216, the merchandise consisted of a marine engine made in the United States and installed in an American vessel which had been wrecked on an outward voyage. The vessel was salvaged and the engine sold to a Canadian firm for restoration, and then returned to the United States. The court found that production of a Certificate of Exportation was "utterly impracticable" because the engine, having become "an essential part of the vessel ready for operation," *id.* at 217, had not left the United States as a trade commodity. *Id.* at 218. The court noted: "[i]f, however, *it was impossible from the beginning* to identify the article in accordance with the regulations, its identity may be established by satisfactory evidence other than that prescribed by the Secretary of the Treasury." (emphasis supplied) *Id.* The court therefore accepted alternative evidence to establish the U.S. origin of the engine. *Id.*

*Nanco, Inc.,* 40 Cust. Ct. 366, interpreted the "impossibility" requirement of *Coastwise.* Certain Swiss watch movements were manufactured into watches with the use of American cases. The manufacturing took place in the United States, but the watches eventually found their way to the Philippines before shipment back to the United States. En route to Los Angeles, where the plaintiff claimed free entry as American goods returned, the customs collector in Honolulu refused to issue a Certificate of Exportation since the initial export of the watches from the U.S. had not been proven to the collector's satisfaction by the documents submitted. *Id.* at 375. Since the collector refused to issue the required export certificate, the court held it was impossible for plaintiff to obtain one. *Id.* Thus, substitute documentary evidence proving the American origin of the imported goods was allowed. *Id.* at 376.

In this case, if the merchandise had indeed been of U.S. origin, it would have almost certainly been identifiable as a "trade commodity" at the time of export. Toiletry articles such as deodorant sticks and baby lotion do not become subsumed into their containers in the way a steamship engine may become part of a vessel (much like fixtures become attached to real property). Production of the required certificate would not have been "utterly impracticable," as required by *Coastwise.*

Furthermore, nothing indicates it was impossible for Mi-Scott, from the beginning, to adhere to the regulatory requirement of producing an export certificate. In fact, "nothing" is just what the form contains; the Certificate of Exportation on the bottom portion of Customs Form 3311 was entirely blank. No evidence reveals whether Customs took *any* affirmative steps to certify or deny the exportation of the merchandise, thus providing a marked contrast from the action taken by Customs in *Nanco*.

This Court will not speculate as to why the Certificate of Exportation was not completed in this case. The fact remains that the form was NOT completed and no evidence indicates it was impossible for Mi-Scott to submit the required Certificate of Exportation. Plaintiff has failed to strictly comply with the congressionally-mandated directive of 19 C.F.R. § 10.1(a).

Even if it were "impossible" for Mi-Scott, from the beginning, to identify the articles in conformance with the governing regulation, the alternative documentation in lieu of the export certificate does not establish the U.S. origin of the merchandise. Plaintiff contends "it was not possible for the importer to obtain proof of the original exportation of these goods directly from the American manufacturer." Plaintiff's Brief at 3. Although plaintiff asserts they went to extraordinary measures to ensure that proof was provided to Customs of the U.S. origin of the imports, the foreign shipper's letter of May 27, 1876 [sic], Defendant's Exhibit 5, recites that the shipper had access to the original factory certificate of origin from Mennen and the original factory invoice. For "reasons of business confidentiality," those documents were not released.

Unfortunately, it is precisely these documents—the original factory certificate of origin and the original factory invoice—which could definitively resolve the question of country of origin. Plaintiff had access to these documents, but chose not to submit them to the Court for reasons of "business confidentiality."

A simple motion under USCIT Rule 26(c) would have resolved plaintiff's perceived dilemma. Plaintiff could have moved for a protective order covering the confidential information, which the Court, in all likelihood, would have granted. Once the order issued, the information could have been supplied, thereby confirming or denying the American origin of this merchandise.

The other proferred documentation needed to overcome the export certificate requirement of 19 C.F.R. § 10.1(a)(3) is simply not sufficient to prove the U.S. origin of the toiletry articles. For instance, plaintiff submitted a letter from SGS, allegedly an independent testing laboratory in Singapore. Defendant's Exhibit 3. The lab compared samples of the imported items at issues with samples of the same products that had been manufactured in the United States (and provided to the lab by plaintiff), and determined that the two batches were an exact match. However, as the government

correctly points out, this merely establishes the imported items conformed to certain samples provided to SGS by Mi-Scott. SGS's statement that "one would conclude that the goods were of U.S. origin," Defendant's Exhibit 3, does not, by any standard, certify the U.S. origin of the subject merchandise.

SGS arrived at this conclusion, claims Customs, from an "inference" that the goods were of U.S. origin, based on the comparison testing. The inference is further drawn by SGS's reference to the goods being accompanied by a "certificate of origin issued by the Singapore Chamber of Commerce," Defendant's Exhibit 3. Customs questions the authenticity of this certificate since "it is not signed by a government official and bears no official number." Defendant's Reply at 4.

The thrust of this argument compels a finding that assumptions and inferences cannot provide the basis for submission of alternative information, instead of the required export certificate. As noted in *J.F. Goldkamp & Co.* v. *United States*, 38 Cust. Ct. 376, 384, C.D. 1890 (1957), "proof offered, in lieu of a certificate of exportation, [which] consists merely of some facts from which an inference of support of plaintiff's position may be drawn * * * may not be accepted in lieu of a certificate of exportation." The evidence submitted does not justify the conclusion that the imported goods were of U.S. origin.

### Conclusion

Because the plaintiff has not strictly complied with the requirements of 19 C.F.R. § 10.1(a) by failing to submit a Certificate of Exportation on Customs Form 3311, and the alternative documentation submitted in lieu thereof is not sufficient to prove the U.S. origin of the imported goods, the presumption of correctness of the government's classification has not been overcome. The imported goods were properly classified under item 461.40 TSUS.