(C. D. 784)

CLOSE & STEWART *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided June 23, 1943)

*Wallace & Schwartz* (*G. W. R. Wallace* of counsel) and *Philip Stein* for the plaintiff.

*Paul .P. Rao*, Assistant Attorney General (*Joseph E. Weil, Richard H. Welsh, John J. McDermott* and *Daniel I. Auster*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This case arising at the port of Seattle involves the collector's assessment of duty upon a printing press and equipment, imported from Canada, at the rate of 25 per centum ad valorem under paragraph 372 of the Tariff Act of 1930. The importer claims that the merchandise is a manufacture of the United States and was exported by and returned to the same firm and therefore is entitled to free entry as American goods returned under the provisions of paragraph 1615 of the act.

The facts adduced at the trial disclose that the Goss Printing Press Co. of Chicago, the party in interest in this case, originally exported the merchandise in 1910 to the Times Printing & Publishing Co. of Victoria, B. C. A copy of the contract of purchase was admitted in evidence as exhibit 1. Also there was admitted in evidence as exhibit 2 a photostatic copy of a memorandum issued by the railroad company acknowledging that a bill of lading had been issued by the "C. & N. W.—Soo Line & C. P." Railroad Co. on November 4, 1910, at Chicago for printing machinery consigned to the order of the Goss Printing Press Co., as the shipper, and destined for Victoria, B. C., Canada, to the "Times Publishing Company." On November 24, 1919, the Times Printing & Publishing Co. transferred the merchandise to the "Morning Albertan" of Calgary, Alberta, Canada, and in February 1928 the Goss Printing Press Co. repurchased the merchandise from the "Morning Albertan" and stored the same in Calgary where it remained for a period of 6 or 7 years. On October 16, 1934, an agreement was entered into to sell the merchandise to the "Idaho Evening Times" at Twin Falls, Idaho, and it was returned to the United States on December 18, 1934, through the port of Spokane, Wash., for delivery to the "Idaho Evening Times." The agreement of purchase was admitted in evidence as exhibit 3.

The collector in his letter of transmittal states as his reason and authority for assessing duty upon the merchandise that "the requirements of art. 392, of the Customs Regulations of 1931 were not complied with. The merchandise does not appear to have been returned by or for the account of the exporter." The entry papers disclose a

statement in the declaration of foreign exporter that the consignee of the merchandise is the Idaho Times Publishing Co. The broker, however, in signing the declaration of nominal consignee or agent, appearing upon the entry, declared that the Goss Printing Press Co. was the actual owner or ultimate consignee. The identity of the parties apparently is the only issue raised and argued by counsel, although at the time of entry, according to the papers, the missing documents consisted of the certificate of exportation and the affidavit of ultimate consignee, and there is no indication that either of them had been subsequently filed. The broker who made the entry testified that the Goss Printing Press Co. signed the necessary return of American goods returned affidavit. Counsel for the Government stated that the sole question arising is whether "this press is subject to duty because it was not imported by or for the account of the exporter."

In view of the record before us, and taking into consideration that the evidence and argument of counsel pertain solely to the absence of the certificate of exportation and to the identity of the parties, we take it that the affidavit of the ultimate consignee required under the regulations to be filed in connection with the entry was duly filed and the Government has waived any questions pertaining thereto.

From the evidence before us it appears that exportation data on file at the various ports, from which the necessary information required in certificates of exportation is obtained, are ordinarily destroyed after remaining on file for a period of 5 years, and that the information relative to the exportation of the printing press here in question was so destroyed, thus making it impossible to procure a certificate from the collector at the port of Chicago, in compliance with article 392 (3) of the regulations.

The Government conceded that the original printing press No. 861 is the printing press that was shipped from the United States in 1910 and returned to the United States in 1934.

An examination of the agreement made between the Goss Printing Press Co. and the Idaho Times Publishing Co. to purchase the merchandise discloses the following:

THIRTEENTH: It is also agreed that the title to said machinery shall not pass to the vendee until the purchase price thereof has been fully paid in cash, and that until that time the machinery shall remain the property of The Goss Printing Press Company (vendor herein). The vendee further agrees that in case default be made in any payment due hereunder, either of principal or interest, or in the payment of any of the promissory notes given in connection therewith or in the payment of insurance premiums, or in the event of any breach or default in any of the terms of this agreement by the vendee, or in case the vendee becomes insolvent or makes an assignment for the benefit of the creditors, if the said machinery shall be threatened with loss or damage or destruction of any kind except reasonable tear and wear, or with the imposition of any lien or adverse claim of any kind, then the whole amount covered by this agreement and all notes, given on account thereof or in connection therewith, whether due

or not, shall, at the option of the vendor, immediately become due and payable and the vendee's right of possession shall cease, and the vendor shall have the right to enter the premises, with or without force or process of law and without being liable for trespass, and take immediate possession of and remove said machinery, and in such event all sums theretofore paid by the vendee shall be retained by the vendor as payment for the use of said machinery during the time it remained in the possession of the vendee, and the vendee expressly waives any public or private resale of said property after such retaking; and any rights which may be given to it by statute or otherwise in said property or in the amount previously paid on account of the purchase price thereof. In the event of such retaking the vendor may at its option resell such machinery at public or private sale holding the vendee liable for any deficiency.

The plaintiff contends that the identity of the merchandise exported and the imported merchandise has been established; that the exported merchandise was imported by or for the account of the exporter; and that if it is impracticable to identify the merchandise in accordance with the regulations by filing the certificate of exportation at the time of entry, the identity of the merchandise may be established by satisfactory evidence other than prescribed by the regulations, citing *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047.

The Government contends that the merchandise is not entitled to free entry under paragraph 1615 because the importer has failed to comply with article 392 of the Customs Regulations of 1931 and inasmuch as free entry of merchandise is allowed only when it is imported by the same person as the exporter, or, by or for the account of the person who exported it, duty was properly assessed thereon.

Paragraph 1615 in the free list of the Tariff Act of 1930 provides in part as follows:

PAR. 1615. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means *if imported by or for the account of the person who exported them from the United States;* * * * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury, * * * *Provided*, That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed; * * *. [Italics ours.]

The Customs Regulations of 1931 provide in part as follows:

Art. 392. Requirements on entry.—(a) The following documents shall be filed in connection with the entry:

1. A declaration of the foreign shipper certified by the American consular officer (consular Form 129) if the value exceeds $100. This declaration will be accepted in lieu of a consular invoice.

2. An affidavit of the owner, importer, consignee, or agent on customs Form 3311.

3. A certificate (customs Form 4467) of the collector of customs at the port from which the merchandise was exported from the United States. Such certif-

icate must show whether or not drawback was claimed or paid on the merchandise covered by the certificate and if paid, the amount thereof. This certificate will be issued on application of the importer or of the collector at the importer's request, and be mailed direct to the port at which it is to be used, and its issuance noted on the export manifest or shipper's export declaration, or on a memorandum attached thereto, reference to the memorandum being made on the export manifest or export declaration, in order that the issuance of duplicate certificates of exportation may be avoided. * * *.

Art. 393. Waiver of evidence.—(a) The collector may waive record evidence of exportation and declaration of the foreign shipper, provided for in article 392(a), if he is satisfied by the production of other evidence that the articles for which free entry under paragraph 1615 is sought are of domestic origin, were imported by or for the account of the exporter (in cases to which that requirement applies), have not been advanced in value or improved in condition while abroad, and that no drawback was allowed or paid on exportation. * * *.

There is no question arising here that the merchandise exported was not the same as that returned. It is conceded by the Government that the printing machinery exported in 1910 was imported in 1934. The question arises, however, first, whether or not the merchandise was imported by or for the account of the person who exported it from the United States and, second, whether the absence of the certificate of exportation precludes free entry under the regulations.

From the evidence presented there is no doubt that Goss Printing Press Co. who shipped the machinery to Canada also imported it into the United States. Exhibit 2 confirms the testimony that said company was the shipper, and exhibit 3 establishes that when said merchandise was returned to the United States said company was the owner thereof. The sale of the merchandise was not complete until the contract had been fully executed, and the prospective purchaser was in no better position than if the merchandise had been merely rented. The ownership at the time of importation remained in Goss Printing Press Co. The owner therefore exported the merchandise from the United States and also returned it to the United States, or rather, it was returned in the name of the broker who entered it for the account of the person who shipped it. We are of the opinion that the record fully establishes that the exporter of the merchandise is to be regarded as the ultimate consignee thereof upon importation.

The only question remaining is whether or not the plaintiff is entitled to relief from the payment of duties inasmuch as the certificate of exportation was not filed as provided by the regulations. This question has been before the court many times and the filing of the certificate has been held mandatory unless the circumstances show an impossibility of compliance.

In the case of *Minneapolis Barrel & Bag Co.* v. *United States*, T. D. 42006, a certificate of exportation could not be procured because of the destruction of the customhouse at Noyes, Minn. However,

proof of exportation was established from landing certificates executed by the Canadian Government officials.

In *New York Dress & Costume Co., Inc.* v. *United States,* Abstract 38432, certain dresses were loaned to a Canadian manufacturer by the plaintiff for copying purposes. They were taken to Canada in the baggage of the Canadian manufacturer without registering the same in the United States at the port of exportation. Upon arrival in Canada the dresses were declared and a deposit of duty was made, to be refunded upon exportation within 6 months. An official landing certificate of the Canadian Customs was admitted in evidence. The court held that in such circumstances it was impossible to produce the required certificate and the proof of exportation was supplied through the landing certificates, and the regulations were found to be substantially complied with.

In *Draeger Shipping Co., Inc.* v. *United States,* Abstract 41131, certain clothing was exported by parcel post and subsequently returned to the exporter. As a certificate of exportation could not be produced duty was assessed upon the merchandise. The court accepted a parcel post receipt as evidence of exportation, stating that as the merchandise was exported by parcel post it was impossible from the beginning to produce a certificate of exportation. It was held that the evidence produced was in substantial compliance with the regulations.

In the case of *Stone & Co.* v. *United States,* 7 Ct. Cust. Appls. 439, T. D. 37009, our appellate court, in discussing the regulations of the Secretary of the Treasury in respect to returned American goods stated:

* * *. Such regulations require, first, a certificate of exportation, and had the regulation stopped there, there would be little doubt that such certificate to be furnished to the collector of customs would be held a condition precedent to the entry of the goods free of duty. But a liberal construction of the statute was adopted and a liberal provision made authorizing the collector of customs to waive a compliance with this requirement if satisfied "from an examination of the goods that the goods are of domestic origin and append an affidavit of the importer showing that it is impracticable to obtain such evidence of outward shipment * * *."

From the evidence before us we are of the opinion that the printing press and equipment in question was imported by the exporter thereof, and in view of evidence establishing that the merchandise was delivered to and accepted by a railroad for delivery to its Canadian destination, such evidence may be accepted in lieu of a certificate of exportation.

For the reasons stated judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry and make refund of all duties taken.