(C. D. 1485)

MADELINE BRITTON  
V. A. LESSOR & Co. } v. UNITED STATES

United States Customs Court, Third Division

(Decided December 12, 1952)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiffs.
*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: The merchandise at issue in this case consists of two carloads of machinery described as "1 lot used vegetable oil mill machinery parts (hydraulic presses and parts)." It was entered under the provisions of duty-free paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as American goods returned. The appraiser described the merchandise as not marked to indicate country of origin, and the collector assessed duty thereon at the appropriate rate under the provisions of said act, giving as the reason for such assessment the "Non-production of satisfactory evidence to substantiate claim for free entry as American Products Returned." The plaintiffs claim that the merchandise is properly free of duty as entered.

At the trial, the United States customs broker making the entry, the Mexican customs broker handling the exporter's business, and the general manager of the shipper testified on behalf of the plaintiffs. The United States customs broker testified that she prepared the entry and all the documents accompanying same. She asked for proof of export from the shipper, Aceitera del Valle, there being no other records available, and was given an invoice "on this lot of machinery." Upon the basis of such invoice, the customs broker

filed the affidavit, customs Form 3311, required by the mandatory regulations upon entry of American goods returned. The invoice referred to was described by the witness as being made "by the Buckeye people that sold the machinery to the Aceitera del Valle." It was admitted in evidence as exhibit 1.

The witness further testified that the merchandise covered by such invoice was purportedly handled by Charles Woo Quong, a United States customs broker, who she *understood* prepared the export documents at the time of exportation. Apparently the witness had no first-hand knowledge of the facts, as the witness further stated that Charles Woo Quong had since died and his export records were not available. The witness did not attempt to ascertain what export records were at the customhouse because the exportation was purported to have occurred in the year 1940, and it is the practice at the port of Calexico to destroy all records if older than 5 years. The witness further testified that she furnished the collector with an affidavit executed by V. A. Lessor, the importer of the merchandise, which was admitted in evidence as exhibit 2, stating that to the best of his knowledge and ability he believed "these parts are standard equipment for vegetable oil mill presses and were manufactured in the United States by Buckeye Iron & Brass Wks. Dayton, Ohio."

The Mexican customs broker testified that his company was the customs broker for the shipper of the instant merchandise and it was its duty to make out the Mexican papers on entry into Mexico of goods from the United States and report them. However, no report was available for the instant merchandise because such broker kept records for only 4 years. Therefore, there were no records of exportation of the oil-mill machinery covered by the invoice, exhibit 1, to the shipper.

The general manager of the shipper testified that his company is in the oil-meal business. He identified exhibit 1 as having been supplied by him. He testified that his company purchased all of its oil-mill machinery from the United States and that it was all shipped through the port of Calexico, that being the only point in the United States through which merchandise may be imported into Mexicali.

In attempting to identify the merchandise in question herein with that described on exhibit 1, the witness testified:

Q. Well, now, is the merchandise that is covered by the yellow invoice, Form 129, that is before you either a part or all of the merchandise that is covered by Exhibit 1, that is, this document?—A. It is part of that.

Q. It is part of the merchandise described in Exhibit 1?—A. Part of the machinery, that is right.

On cross-examination, the witness testified that he had office records of the date of arrival of the machinery involved in the instant importation; that there are books kept of the dates of arrival of every shipment received from the United States which describe the machinery.

However, such book of record was not shown either to the customs broker or the collector, nor introduced in evidence.

Further testimony upon the identity of the merchandise appears as follows:

X Q. Now, you stated that the shipment in the case at bar is part of the machinery listed on Exhibit 1. What is there on the invoice or entry in the case at bar to indicate that it is part of the machinery in exhibit 1?—A. Well, it is probably machinery we bought through this firm. I recognize it myself as the same thing, same merchandise as originally through this invoice.

X Q. Is that the only purchase of machinery that you made from 1940 to 1949?—A. No; there was more, lots more.

\*          \*          \*          \*          \*          \*          \*

X Q. What is it that makes you believe that Exhibit 1 describes some of the exact parts that are named on this entry?—A. I recognize through the way it is listed. I know myself that this is part of the machinery was used for the same work.

X Q. But you just know it, but you had other importations all through those 9 years.—A. I know it because I handle it myself.

X Q. But what is there about this particular description now that makes you say you know it is this merchandise?—A. I am very sure it is the same.

X Q. But it could have been one that you bought the week following or the month following; wouldn't it have the same description?—A. Well, the description here, I know very well it is part of this lot.

The witness had no knowledge of whether or not any drawback was claimed or paid upon exportation of the merchandise covered by exhibit 1.

Counsel for the plaintiffs contends that the requirements of the law and regulations governing the importation of American goods were complied with as fully as possible; first, for the reason that when reimported through the port of exportation, American goods do not require the filing upon entry of a certificate of exportation, inasmuch as the record of such exportation appears upon the books of the customhouse; and, second, because it became impossible to supply such record on account of the destruction of the records at the port of exportation.

Counsel for the plaintiffs further contends that on account of the impossibility of compliance with the requirements of the statute, through the destruction of the export records, the identity of the goods may be supplied at the trial of the case; that such identity has been established by the general manager of the shipper through his testimony that the invoice of sale by Buckeye Iron & Brass Works of Dayton, Ohio, to Aceitera del Valle, S. A. Mexicali, Baja Calif., formed part of the shipment of machinery in question.

Counsel for the Government contends that in the absence of affirmative proof of previous exportation without benefit of drawback, free entry under paragraph 1615 is prohibited, citing sections 10.1 (a)

(3) and 10.2 (*a*) of the Customs Regulations of 1943. It is contended further that evidence other than record evidence which satisfied the collector as to the existence of all the facts entitling the goods to free entry was not furnished; that such evidence as was furnished did not establish any of the facts entitling the goods to free entry; that such evidence, represented by exhibit 1, merely established that a sale was made in September 1940 of certain cottonseed presses and parts for shipment to Calexico, Calif., not Mexico, and contained nothing thereon to show outward movement from the United States to Mexico; that there is nothing on the entry herein which would connect it with the merchandise covered by exhibit 1; and furthermore—

\* \* \* The weights of the items covered by Exhibit No. 1 are not set forth therein, thus eliminating the weight basis of comparison. It is significant, however, that the importation involved in the case at bar consisted of *2 carloads* of machinery and parts, shipped in SP car 69395 and RI car 262420, while *all* of the items covered by plaintiff's Exhibit No. 1 are shown to have been for shipment in *1 car*, i. e., Mo. Pac. car 93220. It thus appears *prima facie* that the instant importation includes a substantial quantity of machinery and parts *in excess* of the items described in the said Exhibit No. 1. In other words, 2 carloads of machinery and parts were imported under the instant entry, whereas the 1940 invoice, Exhibit No. 1, covers a sale of only 1 carload of machinery and does not show actual exportation, with or without drawback, even as to that carload. [Italics quoted.]

The Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, so far as pertinent herein, provides as follows:

PAR. 1615. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

\*       \*       \*       \*       \*       \*       \*

(e) The foregoing provisions of this paragraph shall not apply to—
  (1) Any article upon which an allowance of drawback has been made under section 313 of this Act or a corresponding provision of a prior tariff act, unless such article is in use at the time of importation as the usual container or covering of merchandise not subject to an ad-valorem rate of duty;

\*       \*       \*       \*       \*       \*       \*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

The Customs Regulations of 1943, as amended October 1948, promulgated in conformity with the foregoing provision of the law, are as follows:

10.1 **Requirements on entry.**—(*a*) The following documents shall be filed in connection with the entry of articles claimed to be free of duty under paragraph 1615, Tariff Act of 1930, as amended:

(1) A declaration of the foreign shipper on consular Form 129 (Invoice of Returned American Goods and Declaration of Foreign Exporter) certified by the

American consular officer, if the value exceeds $100. An invoice on consular Form 138 shall not be required if consular Form 129 is filed within the period provided for in these regulations.

(2) An affidavit of the owner, importer, consignee, or agent on customs Form 3311.

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. This certificate shall be issued on application of the importer, or of the collector at the importer's request, and shall be mailed by the issuing officer directly to the port at which it is to be used. If the merchandise has been exported from the port at which entry is made and the fact of exportation appears on the records of the customhouse, the fact of reimportation shall be noted on such export record but the filing of the certificate on Form 4467 shall not be required.

(b) If, in any case where the appraising officer's report does not show definitely that merchandise the value of which exceeds $100 is of domestic origin, the affidavit on customs Form 3311 has not been signed by the owner or ultimate consignee, the collector may require the affidavit to be executed on such form by the owner or ultimate consignee. Such affidavit shall be filed within 3 months after the date of the demand therefor upon the person in whose name the entry was filed. * * *

\* \* \* \* \* \* \*

**10.2 Waiver of evidence.**—(a) The collector may waive record evidence of exportation and the declaration of the foreign shipper on consular Form 129 provided for in section 10.1 (a) (1) if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of the merchandise under paragraph 1615, Tariff Act of 1930, as amended, is dependent. \* \* \*

\* \* \* \* \* \* \*

**10.3 Drawback; \* \* \*.**—(a) Except as prescribed in paragraph (b), no free entry shall be allowed under paragraph 1615, Tariff Act of 1930, in the final liquidation of an entry unless the collector is satisfied by the certificate of exportation or other evidence or information that no drawback was allowed in connection with the exportation from the United States, \* \* \*. In the absence of satisfactory evidence or information as to the allowance or nonallowance of drawback, \* \* \* on any article of United States origin, the entry shall be liquidated with the assessment of duty equal to the total duty \* \* \* imposed with respect to the importation of like articles not previously exported from the United States. \* \* \* If an allowance of drawback on the exportation from the United States of the imported article is established, duty shall be assessed in an amount equal to such drawback \* \* \*; but in no case shall duty equal to drawback, \* \* \* be assessed in an amount in excess of the ordinary customs duty \* \* \* applicable to like articles of foreign origin. \* \* \*

\* \* \* \* \* \* \*

As will be observed from the paragraph of the law under which exemption from duty is claimed, articles manufactured in the United States and shipped abroad are excluded from the exemption provisions if an allowance of drawback has been made thereon, unless used as a covering of duty-free merchandise. Also, any allowance, or

partial allowance granted, is dependent upon compliance with certain mandatory regulations promulgated by the Secretary of the Treasury. These Treasury regulations require a declaration of the foreign shipper and an affidavit of the owner, importer, consignee, or agent. The declaration on consular Form 129 and the affidavit on customs Form 3311 were filed by the customs broker, the importer of record, and there was also filed an affidavit of the ultimate consignee, one of the plaintiffs herein. There was, however, no certificate of exportation filed. The collector's report, filed within the 90-day period after protest was made, indicated that he had reviewed his action in conformity with section 515 and affirmed his original decision for the reason that the articles were not marked to indicate the country of origin and there was a "Non-production of satisfactory evidence to substantiate claim for free entry as American Products Returned."

The evidence adduced before this court which was not before the collector consists entirely of the testimony of the witnesses as above set forth. Of these witnesses, the general manager of the shipper was the only witness who produced additional evidence for the purpose of identifying the merchandise as of American manufacture. The question presented was whether or not the imported merchandise had been sufficiently identified with merchandise covered by exhibit 1, exported from the United States through the port of Calexico on September 12, 1940. As to that, the witness testified that the importation was part of the items covered by that outward shipment. When asked just what there was on the invoice and entry to substantiate his statement, his answer was quite inconclusive. The nearest he could answer the question was to say "I know very well it is part of this lot." As counsel for the Government very aptly pointed out, exhibit 1 covers one carload of machinery, whereas the shipment arriving in the United States comprised two carloads.

In the opinion of the court, the evidence adduced is insufficient to identify the merchandise as having been exported from the United States on September 12, 1940, or any other time. The law and the regulations require that before merchandise is entitled to an exemption from duty upon the ground that it is American goods returned it must be identified as of such production. If the collector is satisfied that the goods were produced in the United States, he is given authority to waive the production of the certificate of exportation which was not filed in the case at bar. However, before doing so, he is required to be satisfied by the production of other evidence as to the existence of all the facts upon which free entry is dependent. These facts not only embrace the positive identification of the imported goods as having been previously exported American goods but also whether or not they are excluded from the provisions of paragraph 1615, *supra*, because of the fact that even though of American

manufacture they consisted of drawback goods. There does not appear to have been any evidence either before the collector or adduced before this court upon that point.

The claim that there were no customhouse records either in the United States or in Mexico of the exportation from the United States into Mexico in the year 1940 on the ground that such records were destroyed before the date of importation of the merchandise herein is entirely immaterial. The impossibility of compliance with the regulations because of such destruction does not, of itself, sanction the free entry of so-called American goods without the production of other satisfactory evidence as to the identity thereof.

None of the cases relied upon by the plaintiffs is in point for the reason that where there was an exportation, such as there must have been in the case at bar, the proof established that the port of exportation and the port of importation were the same; that the export records were on file at the customhouse; and that the drawback evidence there appeared, or was supplied by the evidence. In cases cited as to the impossibility of compliance with the regulations for various reasons, substitute documentary evidence was accepted, and the court found that all of the regulations attending free entry were complied with, including identity.

In cases where goods were shipped from the United States through various ports and the collector refused to waive compliance with the regulations, even though the certificates of export were later obtained, the courts have held that the filing of said certificates is mandatory and the Government is entitled to judgment. That also has been held true in the absence of any evidence as to whether or not drawback was paid. Where the claim is that the goods were exported and imported through the same port and the records have been destroyed, it has been held that the importer may not recover without an identification of the merchandise as well as the production of evidence as to whether or not drawback was paid thereon.

*Oil Well Supply Co.* v. *United States*, 18 Cust. Ct. 68, C. D. 1047, involved certain oil-well machinery parts claimed as American goods returned which had been shipped to Canada at various times through different ports. The collector refused to waive record export data and liquidated the entry. Thereafter, the certificates were obtained. The court held, however, that inasmuch as the collector refused to waive compliance, the Government was entitled to judgment.

*Mario Marrero, Administrator War Emergency Program, Government of Puerto Rico* v. *United States*, 22 Cust. Ct. 308, Abstract 53131, involved certain surplus war material from Cuba. Although the merchandise had been originally purchased from the United States, the shipper was unsuccessful in obtaining certificates of exportation.

The appraiser returned the merchandise as "believed to be of American mfr. not advanced in value or improved in condition." The collector, however, assessed duty in the absence of the certificate of exportation or "any evidence or information that no drawback was allowed in connection with the exportation of the merchandise from the United States." In entering judgment for the Government, the court stated:

The courts have consistently held that where the certificate of exportation has not been filed with the collector, and the filing thereof is not waived, no recovery of duties is allowed. The filing of the certificate of exportation is a condition precedent to recovery.

In the case of *Imperial Gas Co.* v. *United States*, 26 Cust. Ct. 382, Abstract 55362, certain gas steel cylinders were returned empty to the United States from India and Australia. As the drums were claimed to have been shipped from Los Angeles, the port of entry in that case, it was contended it became unnecessary to file certificates of exportation. On account of the condition of the drums, it was impossible to identify them as having been previously shipped out because of the numbers having become obliterated. Although the plaintiff's witnesses were positive in their identification that they were drums they had previously shipped, the court found that the evidence was insufficient to establish that the drums were previously exported through the port of Los Angeles from the United States as containers of gas.

In the *Imperial Gas Co.* case, *supra*, as in the case at bar, the export records of the customhouse had been destroyed, and the court held it is essential that evidence be produced not only to identify the merchandise claimed to have been exported as the imported merchandise, but also to establish that no drawback had been claimed or paid. Without the identity of merchandise first being established, it is immaterial that the records at the customhouse were not available. The identity of the merchandise herein not having been established, judgment will be entered in favor of the Government.