Before the Third Division

June 23, 1955

**No. 59188.**—Dulien Steel Products, Inc., of Calif. and W. J. Byrnes & Co., Inc. v. United States, protest 182770–K (Los Angeles).—

Johnson, Judge: The protest involved herein covers truck casings, cranes shovels, and parts of cranes and shovels, imported from Saipan and Guam on the "Lakewood Victory" on or about January 10, 1949, and entered at the port of

Los Angeles on April 21, 1949. It is claimed that said items are entitled to free entry as American goods returned under paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. At the trial, the claim was limited to two crawler cranes, identified on the invoice as NDB–NC–4 and SN–2–17.

Plaintiffs called Howard J. Mann, customhouse broker associated with W. J. Byrnes & Co., Inc., the firm which filed the entry herein. He testified that a portion of the goods was entered under paragraph 1615 and that, in connection therewith, he filed Form 3311, as required by section 10.1 of the Customs Regulations of 1943. He did not file Form 129, referred to in the same section, but he said that an application for the cancellation of its production was filed and the bond was canceled. He did not file Form 4467.

The witness was shown the invoice and testified that the examiner had marked the two items herein as free under paragraph 1615, or as dutiable at 15 per centum under paragraph 372. According to the witness, the merchandise was war surplus, subject to the Surplus Property Act of 1944. He testified that, as to 70 per centum of the merchandise on the entry, various manufacturers had filed affidavits, stating that the merchandise was shipped out around 1941 to 1944 "through the Armed Service Forces."

Louis Klatzker, secretary of Dulien Steel Products, Inc., the importer herein, testified that he had observed the merchandise that arrived on the "Lakewood Victory" in January 1949 and that employees of the importer, under his supervision, inspected it and noted identifying serial numbers, engine numbers, and marking numbers. He described the merchandise as:

* * * in a very rusty, decrepit condition, parts missing, the material had evidently laid in the jungle for some period of time and rusted, had eaten through it.

The witness stated that the unit marked NDB–NC–4 was a crawler crane, mounted on 10 wheels, and was manufactured by the Universal Unit Machinery Co. of Milwaukee, Wis., and that the other item, SN–2–17, was a crane, manufactured by the Allis-Chalmers Manufacturing Co., also of Milwaukee. In his opinion, the cranes were manufactured in the United States "because cranes like the unit and the Allis-Chalmers have certain characteristics that you identify them just like you identify a car; know whether it is a Cadillac or Ford; and as far as I know, Allis-Chalmers or Universal Unit do not manufacture cranes outside the United States."

At a later hearing, the following statements were made by counsel:

MR. TUTTLE: * * * The record indicates that the material specified in the record by items numbers and all was war surplus goods; that is, material used in the Pacific by the Armed Services and it also shows that the importer complied with the regulations in part by filing form 3311 by giving bond to the production of form 129 which later was cancelled by the collector—that is, the bond was cancelled but that the importer did not file the document—the remaining document called for in the regulation, form 4468 [sic], that is a certificate of exportation and whether it is in the record already up to this time, I don't know, but in any event, it is conceded that that was not filed, your Honor. I will stipulate with the Government that the collector here is satisfied as to the item described as one crawler with the letters NDB–NC–4; that the manufacturer, Universal Unit Machine Company did not have a rate of drawback at the time of exportation and second, as to the item described in the record as SN–2–17, one crawler, that the manufacturer, Allis-Chalmers & Co. did not claim drawback on its sales to the armed services during World War II. That is the offer, your Honor.

MISS STRUM: Your Honor, Mr. John C. Townsend, Deputy Collector of Customs at the Port of Los Angeles, who is in the court room now advises me that he is personally familiar with the records relating to this transaction; that the facts as stated by the importer's attorney are correct to the best of his knowledge and therefore, the Government so stipulates.

Paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides for free entry for the following:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

\* \* \* \* \* \* \*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

In order to recover, plaintiffs must establish that the merchandise was American goods returned, without advance in value or improvement in condition, and that the applicable regulations have been complied with or that compliance was waived by the collector or was impossible. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 C. C. P. A. (Customs) 5, T. D. 48976; *Balfour, Guthrie & Co., Limited* v. *United States*, 26 Cust. Ct. 223, C. D. 1327; *Thornley & Pitt a/c Earl Investment Corpn.* v. *United States*, 33 Cust. Ct. 136, C. D. 1645; *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047; *Close & Stewart* v. *United States*, 11 Cust. Ct. 14, C. D. 784, and cases there cited.

From the record herein, it appears that the merchandise was of American manufacture and that it was not returned, advanced in value or improved in condition, but rather the reverse. Under paragraph 1615 of the Tariff Act of 1930, as amended, such merchandise is entitled to free entry, provided the regulations have been complied with.

Under the Customs Regulations of 1943, as amended, in effect at the time of entry herein, it was provided:

10.1 **Requirements on entry.**—(*a*) The following documents shall be filed in connection with the entry of articles claimed to be free of duty under paragraph 1615, Tariff Act of 1930, as amended:

(1) A declaration of the foreign shipper on consular Form 129 (Invoice of Returned American Goods and Declaration of Foreign Exporter) certified by the American consular officer, if the value exceeds $100. An invoice on consular Form 138 shall not be required if consular Form 129 is filed within the period provided for in these regulations.

(2) An affidavit of the owner, importer, consignee, or agent on customs Form 3311.

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. \* \* \*

10.2 **Waiver of evidence.**—(*a*) The collector may waive record evidence of exportation and the declaration of the foreign shipper on consular Form 129 provided for in section 10.1 (*a*) (1) if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of the merchandise under paragraph 1615, Tariff Act of 1930, as amended, is dependent. However, an invoice on consular Form 138, or a bond for the production thereof within 6 months from the date of entry, shall be required unless the article is otherwise exempt from the requirement that such invoice be filed. Should consular Form 129 be produced within the 6-months' period instead of consular Form 138, it may be accepted in cancellation of the bond.

In the instant case, the affidavit on Form 3311 was filed by the plaintiffs, but neither the declaration of the foreign shipper on consular Form 129 nor the certificate of exportation on Form 4467 was filed. Plaintiffs claim that the production of Form 4467 was impossible, on the ground that no export declarations were required for the shipment of military and naval supplies and equipment for the

use of United States Armed Forces abroad (15 C. F. R. § 30.46, June 21, 1940). The difficulty with this contention is that it is not clear from the evidence whether the merchandise was exported when this provision was in operation. The only evidence as to the date of exportation is the broker's statement that, on manufacturer's affidavits as to 70 per centum of the merchandise, it was stated that the material was shipped out between 1941 and 1944. There is nothing to indicate whether the cranes herein were included within that 70 per centum.

Under section 10.2 (a) of the Customs Regulations of 1943, as amended, the collector may waive the production of record evidence of exportation and of Form 129, if he is satisfied by other evidence of the existence of all the facts upon which the entry of the merchandise under paragraph 1615, as amended, is dependent. In the instant case, according to counsel for the Government, the collector agreed with the statement of facts made by counsel for the plaintiffs. The statement is somewhat confused, but is to the effect that the bond for the production of Form 129 was canceled; that Form 4467 was not filed; but that no drawback was paid or claimed on the merchandise. Whether this was intended to be a waiver of the production of the required documents, is not clear.

We note, however, that in the collector's memorandum in connection with the protest, the basis of affirmation of his decision is given as "Section 10.1 (3) Customs Regulations of 1943 & TD 51802—Certificates of Exportation (CF 4467) not produced." On the other hand, there is a stamped notation on the entry next to a group of three items, including the two here involved, stating:

Regulation evidence of exportation waived.   No drawback Sec. 10.2 (a) C. R. 1943
[Sgd.]   John C. Townsend,
Deputy Collector of Customs.

These statements have not been offered in evidence and are noted because they indicate inconsistent positions taken by the collector. It may be, therefore, that the production of the required documents was waived or intended to be waived by the collector.

In view of the confused state of the record, we hold that the ends of justice will best be served by restoring the case to the next Los Angeles docket for further proof.

It is so ordered.