(C. D. 1890)

J. F. GOLDKAMP & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 18, 1957)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum, Richard H. Welsh*, and *Samuel D. Spector*, trial attorneys), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise, described on the entry as iron pipe fittings and rubber washers, at 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as articles of metal, not specially provided for. It is claimed that the merchandise is entitled to free entry under paragraph 1615 (a) of said tariff act, as amended by the Customs Administrative Act of 1938, or, if dutiable, at 37½ cents per ton under paragraph 301, as modified, as scrap; or at 4 per centum ad valorem under paragraph 1555, as modified, as waste; or at 10 per centum ad valorem under paragraph 327, as modified, as iron or steel articles. The only claim pressed at the trial or in the briefs is that the merchandise is entitled to free entry under paragraph 1615 (a), as amended. The other claims are, therefore, deemed abandoned.

The pertinent provisions of the tariff act are as follows:

[PAR. 397, as modified by the General Agreement on Tariffs and Trade, T. D. 51802]:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* _ \* \* \* \*

Other (except slide fasteners and parts thereof)\_\_\_\_22½% ad val.

PAR. 1615. (a) [as amended by the Customs Administrative Act of 1938] Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

\* \* \* \* \* \* \*

(e) The foregoing provisions of this paragraph shall not apply to—

(1) Any article upon which an allowance of drawback has been made under section 313 of this Act or a corresponding provision of a prior tariff act, unless such article is in use at the time of importation as the usual container or covering of merchandise not subject to an ad-valorem rate of duty;

\* \* \* \* \* \* \*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

The regulations in effect at the time of this importation (Customs Regulations of 1943, as amended) provided:

**10.1 Requirements on entry.**—(a) \* \* \* the following documents shall be filed in connection with the entry of articles claimed to be free of duty under paragraph 1615, Tariff Act of 1930, as amended:

(1) A declaration of the foreign shipper on consular Form 129 (Invoice of Returned American Goods and Declaration of Foreign Exporter) certified by the American consular officer, if the value exceeds $100. An invoice on consular Form 138 shall not be required if consular Form 129 is filed within the period provided for in these regulations.

(2) An affidavit of the owner, importer, consignee, or agent on customs Form 3311.

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. This certificate shall be issued on application of the importer, or of the collector at the importer's request, and shall be mailed by the issuing officer directly to the port at which it is to be used. If the merchandise has been exported from the port at which entry is made and the fact of exportation appears on the records of the customhouse, the fact of reimportation shall be noted on such export record but the filing of the certificate on Form 4467 shall not be required.

\* \* \* \* \* \* \*

**10.2 Waiver of evidence.**—(a) The collector may waive record evidence of exportation and the declaration of the foreign shipper on consular Form 129 pro-

vided for in section 10.1 (a) (1) if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of the merchandise under paragraph 1615, Tariff Act of 1930, as amended, is dependent. * * *

\*         \*         \*         \*         \*         \*         \*

**10.3 Drawback; internal-revenue tax.**—(a)    Except as prescribed in paragraph (b), no free entry shall be allowed under paragraph 1615, Tariff Act of 1930, in the final liquidation of an entry unless the collector is satisfied by the certificate of exportation or other evidence or information that no drawback was allowed in connection with the exportation from the United States, * * *.    In the absence of satisfactory evidence or information as to the allowance or nonallowance of drawback, * * * on any article of United States origin, the entry shall be liquidated with the assessment of duty equal to the total duty * * * imposed with respect to the importation of like articles not previously exported from the United States.    * * * If an allowance of drawback on the exportation from the United States of the imported article is established, duty shall be assessed in an amount equal to such drawback, * * * but in no case shall duty equal to drawback, * * * be assessed in an amount in excess of the ordinary customs duty * * * applicable to like articles of foreign origin.    * * *

At the trial, Charles O. Vasterling, office manager of J. F. Goldkamp & Co., customhouse broker, testified that he was familiar with the shipment involved herein and that he handled the details of entry at the port of St. Louis.   The merchandise was consigned to Groban Supply Co. of Chicago, and, on instructions of the consignee, was forwarded to the H. A. McCarthy Co. at Tulsa, Okla.   At the request of the witness, the Groban Supply Co. furnished him with a sample of the merchandise (marked plaintiff's exhibit 1 for identification).

At a subsequent hearing, Harold A. McCarthy testified as follows: In the latter part of April 1951, he received a shipment of 587 bundles of couplings from the Groban Supply Co.   He inspected the merchandise, which consisted of couplings, tied five to a bundle, and gaskets, separately packed in boxes.   He subsequently sent to the Groban Supply Co. in Chicago a bag containing 15 of these couplings, in 6-inch and 4-inch sizes.   He identified plaintiff's exhibit 1 for identification as typical of all the merchandise sent to Groban, except for size, the exhibit being a 4-inch coupling.   He described the merchandise as so-called Victaulic Gruva-Grip iron pipe couplings and stated that it was used as follows:

The greater use of that is during the war, the gasoline lines, what they called invasion pipe, as the troops moved forward, they lengthened their lines and pumped their gasoline through these portable pipe lines and the pipe had a groove on it for this coupling to fit.   The pipe was grooved for the coupling. There's rubber inside of that with the groove in the rubber, rubber gaskets. It fits right in there.

Raymond S. Groban, a partner of the Groban Supply Co., testified that he was familiar with the merchandise involved herein and that he had personally purchased it and had sold it to Mr. McCarthy. Subsequently, he received 15 samples from Mr. McCarthy as repre-

sentative of the merchandise. He inspected the samples and sent one to J. F. Goldkamp & Co., his customs broker. It was representative of the merchandise he had purchased in Italy. This sample (plaintiff's exhibit 1 for identification) was then marked plaintiff's exhibit 1.

Mr. Groban testified, further, that he had purchased a large quantity of iron pipe couplings from stocks in Italy that had originated from the United States forces and had been disposed of as surplus, and that this shipment came out of that supply. He personally inspected the merchandise in Rome and purchased it from a private individual there, an Italian. He testified:

* * * The Italian Government had an arrangement with the United States Government in which all of the U. S. war surplus material in Italy at the end of the war was turned over to the Italian Agency identified by the letters A. R. A. R. Co.

He added that the A. R. A. R. Co. published illustrated catalogs of the United States war surplus material that they had for sale and, when the witness purchased the material, the seller showed him the catalog he had with the name of the company on top.

Edgar L. Melton, manager of sales administration of Gustin-Bacon Manufacturing Co. of Kansas City, Mo., testified as follows: He has been with the company since 1936 and was previously general purchasing agent. The firm is engaged in the manufacture of glass insulation, pipe couplings and fittings, automotive supplies, and railroad supplies. It produces merchandise like plaintiff's exhibit 1, which he described as Victaulic-type coupling. It is designed and used to connect two links of pipe. From the layout of the coupling, the ribbed design, and the lettering and pattern numbers that appear on it, he identified the exhibit as a product of his company. He stated:

Insofar as Gustin-Bacon is concerned, a grooved-in coupling was placed on the market in 1938. It was designed around the only grooved-type coupling then in existence that we knew of, that being manufactured by the Victaulic Company of America.

\*       \*       \*       \*       \*       \*       \*

The main characteristic is this shoulder of the coupling which is designed to fit into a groove.

\*       \*       \*       \*       \*       \*       \*

* * * When the shoulder of this coupling is fitted into the groove cut into the pipe ends, it holds the two ends together, prevents their pulling apart and by means of the gasket utilized in the coupling, it affects a pressure seal to prevent leakage.

The witness stated that no Federal taxes that would be refunded when merchandise is exported had ever been assessed against these couplings. He said that his firm used domestic materials in making the merchandise and that, except when first produced, the rubber

used in the gaskets was synthetic rubber made in the United States. He stated also that the malleable iron in the couplings was manufactured by a foundry located within the United States, but he did not know the origin of all the ingredients which made up the finished articles which he purchased. On making sales, he did not represent to anyone that drawback or refund of taxes could be obtained in connection with this merchandise.

At a later hearing, Byron Kinkade, assistant collector of customs at St. Louis, Mo., was called as a witness for the defendant. He testified that he was familiar with the merchandise involved herein and had personally examined samples of it. He found that the couplings were in good condition and usable as such. They were not marked "Made in the United States of America," nor was there any marking on the rubber gaskets. He stated that the merchandise was not admitted as American goods returned for the following reasons:

We have no evidence that the merchandise was actually of United States origin. We have no evidence of any kind.

\*      \*      \*      \*      \*      \*      \*

In order to gain free entry of so-called United States goods, the regulations require certain evidence be presented to establish that the goods had been exported from this country originally, and in this case there was no such evidence.

\*      \*      \*      \*      \*      \*      \*

We have no evidence that drawback was not paid if the goods originally were exported from the United States; we have no evidence that drawback was not paid in that case.

The question before the court is whether this merchandise is entitled to free entry under paragraph 1615 (a), *supra*, as American goods returned. Under the statute, American manufactures, when returned after having been exported, without having been advanced in value or improved in condition, are entitled to free entry, provided no drawback has been allowed and provided there has been compliance with such regulations as to proof of identity and as to the conditions of the paragraph as the Secretary of the Treasury may prescribe. In order to prevail, plaintiff must establish that the merchandise was, in fact, American goods exported without payment of drawback and returned without advance in value or improvement in condition and that the applicable regulations have been complied with or compliance waived. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 C. C. P. A. (Customs) 5, T. D. 48976; *Balfour, Guthrie & Co., Limited* v. *United States*, 26 Cust. Ct. 223, C. D. 1327; *Thornley & Pitt a/c Earl Investment Corpn.* v. *United States*, 33 Cust. Ct. 136, C. D. 1645; *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T. D. 38047; *Close & Stewart* v. *United States*,

11 Cust. Ct. 14, C. D. 784; *Madeline Britton et al.* v. *United States,* 29 Cust. Ct. 314, C. D. 1485.

In the instant case, the certificate of exportation on customs Form 4467, required by section 10.1 (*a*) (3) of the customs regulations, *supra,* has not been filed, nor has the filing thereof been waived by the collector. Plaintiff claims, however, that compliance with this portion of the regulations was impossible, because no exportation records were kept by the Government during the war.

The general rule is that, where the evidence does not establish that the merchandise was imported through the port of exportation, the filing of a certificate of exportation is mandatory. *V. A. Lessor & Co.* v. *United States,* 29 Cust. Ct. 258, C. D. 1479; *Mine Safety Appliances Company* v. *United States,* 36 Cust. Ct. 277, C. D. 1786. However, in some situations, other satisfactory proof, in lieu of a certificate of exportation, has been accepted.

In *United States* v. *Coastwise Steamship & Barge Co., supra,* the importer established that a marine engine had been made in the United States and installed in an American vessel, which had been wrecked on its outward voyage. Thereafter, the vessel had been salvaged and the engine sold to a firm in Canada, whence it was returned to the United States. The court stated that every requirement for the admission of the engine as American goods returned had been met except that proof of identity was not made in accordance with the regulations. The court found that it was impossible to produce a certificate of exportation, since the engine had not left the country as a trade commodity, and stated (p. 218):

> The importer of a manufacture, which became a commodity after it left the United States, must of course not only identify it as the American product, but he must show that it has not been advanced in value or improved in condition, and in establishing identity he must conform to all practicable Treasury regulations applicable to the case. If, however, it was impossible from the beginning to identify the article in accordance with the regulations, its identity may be established by satisfactory evidence other than that prescribed by the Secretary of the Treasury.

The court concluded that, since it was wholly impracticable to prove identity in accordance with the regulations and since identity had been proven beyond all reasonable doubt, the merchandise was classifiable as American goods returned.

In other cases, where it was impossible to produce certificates of exportation, other documentary evidence, such as landing certificates, executed by Canadian Government officials, or parcel-post receipts, has been accepted. *Minneapolis Barrel & Bag Co.* v. *United States,* 51 Treas. Dec. 187, T. D. 42006; *New York Dress & Costume Co., Inc.* v. *United States,* 73 Treas. Dec. 1258, Abstract 38432; *Draeger Shipping Co., Inc.* v. *United States,* 2 Cust. Ct. 676, Abstract 41131.

In *Close & Stewart* v. *United States, supra,* the Government conceded that the printing machinery, imported in 1934, was the printing machinery which had been exported in 1910, and it was established that the merchandise was imported by the exporter thereof. In lieu of a certificate of exportation, which could not be obtained, because of the destruction of records, the court accepted documentary evidence establishing that the merchandise was delivered to and accepted by a railroad for delivery to its foreign destination.

However, the impossibility of compliance with the regulations because of the destruction of customhouse records does not, of itself, sanction the free entry of merchandise without the production of other satisfactory evidence of identity. *Madeline Britton et al.* v. *United States, supra.* In that case, the court found that the evidence was insufficient to identify the merchandise as having been exported from the United States in 1940, as claimed, or at any other time, and held that it was not entitled to free entry. In the course of the opinion, reference was made to cases cited by the plaintiffs involving impossibility of compliance with the regulations, and the court noted that, in those cases, substitute documentary evidence had been accepted.

In *Thornley & Pitt a/c Earl Investment Corpn.* v. *United States, supra,* where no documentary evidence of exportation was furnished, it was held that the merchandise was not entitled to free entry as American goods returned. One of the reasons for this holding was that there had been no compliance with the regulations. On this point, the court said (p. 145):

Plaintiff contends, however, that compliance with that portion of the regulations, *supra,* requiring the filing of a certificate of exportation (customs Form 4467), was rendered impossible as no customs records were kept of the exportation of military goods, citing § 30.46 of the regulations for the collection of statistics of foreign commerce and navigation of the United States, Bureau of the Census, 15 C. F. R., § 30.46, which provides as follows:

*Shipments of furniture, supplies, equipment owned by Government offices and employees.*—No export declarations are required for shipments of office furniture, equipment and supplies, household goods and personal property to United States offices or employees in foreign countries or noncontiguous territories for their exclusive use, or for shipments of books, maps, charts, and pamphlets made by United States Government offices to foreign libraries or Government establishments or for shipment of military and naval supplies and equipment for the use of United States military and naval forces abroad.

As pointed out in plaintiff's exhibit 3, a letter from the Bureau of Customs, without evidence as to the date or dates of exportation, it is impossible to determine whether the provisions of the cited regulation operated to effect the instant transaction. Neither may it be inferred from the proof here adduced, to the effect that military cargo and military vessels were cleared without detailed description or the filing of an exportation declaration, that the involved motor

graders were military or naval supplies or equipment for the use of the United States military or naval forces abroad.

Here, also, no documentary evidence of exportation has been presented, nor is there anything in the record to indicate when or under what circumstances this particular merchandise was exported. According to the witness Melton, such merchandise was placed on the market in 1938; therefore, this lot or parts thereof may have been exported before the war, prior to the time when the regulation quoted above from the *Thornley & Pitt* case went into effect. In fact, there is nothing to show that the manufacturer produced or sold such merchandise for use of American troops or that the items before us were actually shipped as military supplies for the use of our forces abroad. Furthermore, the evidence tending to show that this material was war surplus is unsatisfactory. It was bought from a private individual in Italy, who showed the purchaser a catalog, published by the A. R. A. R. Co., said to be an Italian Government agency to which United States war surplus was turned over. Whether or not the seller had merchandise, in addition to that listed in the catalog, and whether or not the goods purchased were described in said catalog is not indicated.

While we recognize that it might be impossible to obtain a certificate of exportation covering merchandise shipped as military supplies to American forces abroad during the war, in the instant case, no evidence of exportation has been presented nor has plaintiff established that this material was actually exported during the war as military supplies. The proof offered, in lieu of a certificate of exportation, consists merely of some facts from which an inference in support of plaintiff's position might be drawn, that is, that, since this material was of the kind used by invasion troops and was purchased after the war in Italy from an individual who represented it as war surplus and showed the purchaser a catalog, published by a company said to be an Italian agency to which war surplus had been transferred, which catalog may have listed this material as war surplus, said material must have been exported during the war as military supplies for the use of American Armed Forces abroad. This inference is not justified by the evidence and may not be accepted in lieu of a certificate of exportation.

In addition to the fact that no certificate of exportation has been filed, the evidence on the question of payment or nonpayment of drawback is not conclusive. Mr. Melton, who had been purchasing agent and sales manager of the manufacturing company, stated that he knew there were no Federal taxes assessed against this product that would be refunded on exportation, but he did not explain how he obtained this information. He said the merchandise was produced

from domestic materials, but he did not know the origin of all the ingredients.

The only evidence as to the condition of this merchandise is the statement of the assistant collector that it was in good condition and usable as couplings. Whether or not it had been advanced in value or improved in condition while abroad was not stated by anyone.

On the record presented, we hold that this merchandise is not entitled to free entry under paragraph 1615 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as American goods returned. The protest is overruled and judgment will be rendered for the defendant.