(C.D. 2381)

A. E. COPPERSMITH v. UNITED STATES

United States Customs Court, Third Division

(Decided January 2, 1963)

*Lawrence & Tuttle* (*Edward N. Glad* and *Joseph Schwartz* of counsel) for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon, Alfred A. Taylor, Jr.*, and *Morris Braverman*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of aluminum sheets, imported from Australia and entered under Special Privilege Entry No. 13 (Zone Lot No. 438) on January 12, 1951. Portions of the merchandise were withdrawn for consumption from time to time thereafter through March 1955, and duty was assessed at 3 cents per pound under paragraph 374 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. It is claimed that the merchandise is entitled to free entry under paragraph 1615 of said tariff act, as amended, as American goods returned, or, on material where evidence of exportation cannot be produced or waived, that the importer is entitled to pay an amount not to exceed the amount of drawback which could have been claimed by the manufacturers.

The pertinent provisions of paragraph 1615, as amended, are as follows:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * *. [Free.]

* * * * * * *

(e) The foregoing provisions of this paragraph shall not apply to—

(1) Any article upon which an allowance of drawback has been made under section 313 of this Act or a corresponding provision of a prior tariff Act, * * *

\* \* \* \* \* \* \*

(f) * * * When because of the destruction of customs records or for other cause it is impracticable to establish whether drawback was allowed, or to determine the amount of drawback allowed, on a reimported article excepted under subparagraph (e), there shall be assessed thereon an amount of duty equal to the estimated drawback and internal-revenue tax which would be allowable or refundable if the imported merchandise used in the manufacture or production of the reimported article were dutiable or taxable at the rate applicable to such merchandise on the date of importation, but in no case more than the duty and tax that would apply if the article were originally imported. * * *

\* \* \* \* \* \* \*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

The regulations in effect at the time of entry provided:

**10.1 Requirements on entry.—**(a) Except as otherwise provided for in this section or in section 10.2, the following documents shall be filed in connection with the entry of articles claimed to be free of duty under paragraph 1615, Tariff Act of 1930, as amended:

\* \* \* \* \* \* \*

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported from the United States. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. * * *

\* \* \* \* \* \* \*

**10.2 Waiver of evidence.—**(a) The collector may waive record evidence of exportation and the declaration of the foreign shipper on consular Form 129 provided for in section 10.1(a)(1) if he is satisfied by the production of other evidence as to the existence of all the facts upon which the entry of the merchandise under paragraph 1615, Tariff Act of 1930, as amended, is dependent. * * *

\* \* \* \* \* \* \*

**10.3 Drawback; internal-revenue tax.—**(a) Except as prescribed in paragraph (b), no free entry shall be allowed under paragraph 1615, Tariff Act of 1930, in the final liquidation of an entry unless the collector is satisfied by the certificate of exportation or other evidence or information that no drawback was allowed in connection with the exportation from the United States, * * *. In the absence of satisfactory evidence or information as to the allowance or nonallowance of drawback, * * * on any article of United States origin, the entry shall be liquidated with the assessment of duty equal to the total duty * * * imposed with respect to the importation of like articles not previously exported from the United States. * * * If an allowance of drawback on the exportation from the United States of the imported article is established, duty shall be assessed in an amount equal to such drawback, * * *; but in no case shall duty equal to drawback, * * * be assessed in an amount in excess of the ordinary customs duty * * * applicable to like articles of foreign origin. * * *

At the trial, the protest was abandoned as to the merchandise covered by withdrawal numbers 5678, 269, and 476. It was stipulated

that all of the aluminum sheets represented by the items marked on the withdrawal papers by the customs inspector "A," "R," "RL," or "Alcoa" were of American origin; that those marked "X" were of foreign origin; and that those marked "A," "R," or "RL" were returned to the United States without having been advanced in value or improved in condition while abroad.

Customs Form 4467, the certificate of exportation, the filing of which is required by the regulations, has not been produced nor has its production been waived by the collector. Plaintiff claims that it was impossible to produce such certificate, because the merchandise was exported during the war and has presented other proof which it contends can be substituted for the filing of said form.

Morris Rohrlich, general manager of General Pipe & Supply Co., the importer herein, testified that, in August 1950, he was approached by a dealer who told him there was American-made war surplus aluminum available in Australia. He was skeptical at first, because he believed that, by 1950, all war surplus had been disposed of. However, after an agent had inspected the material, the firm purchased it together with certain foreign-made aluminum. Upon arrival at Los Angeles, the shipment was placed in the Foreign Trade Zone, so that the foreign-made and the American material could be separated.

James E. Sweeney, manager of American Oceanic Forwarding Co., who made the entry of the merchandise, testified that he saw the cases when they were landed and that they did not carry port marks, that is, the name of the consignee and the port of discharge, as cases normally do. Instead, the cases and the packing lists were marked with symbols which were used during the war on merchandise that was moved through war shipping channels. According to the witness, all freight that moved on war shipping ships during the war was marked in that manner; there were never any port marks.

At the second hearing, Edward T. Duffy, office manager of the Chicago sales office of Reynolds Metal Co., testified that aluminum was produced from bauxite and that it takes approximately 4 tons of bauxite to produce 1 ton of aluminum.

There was received in evidence records kept in the regular course of business by the Reynolds Metal Co., showing drawback claims made between November 3, 1939, and April 1, 1960 (plaintiff's collective exhibit 5). Mr. Duffy stated that the records showed that, in 1942, the firm filed drawback claims only on lead shipments; that, in 1943, claims were filed on lead and on bauxite, and, in 1944 and 1945, on lead only. He testified also that the company never filed drawback claims in connection with merchandise sold to the Government, because there was a stipulation in the regulations that such drawback,

if collected, must be refunded to the purchasing agency of the Government.

Although it has been stipulated that the merchandise herein was of American origin, in order to prevail, plaintiff must also establish that the applicable regulations have been complied with or compliance waived or impossible and that the merchandise was exported without benefit of drawback. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 CCPA 5, T.D. 48976; *Thornley & Pitt a/c Earl Investment Corpn.* v. *United States*, 33 Cust. Ct. 136, C.D. 1645; *United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T.D. 38047; *V. A. Lessor & Co.* v. *United States*, 29 Cust. Ct. 258, C.D. 1479; *Mine Safety Appliances Company* v. *United States*, 36 Cust. Ct. 277, C.D. 1786; *Madeline Britton et al.* v. *United States*, 29 Cust. Ct. 314, C.D. 1485.

While there is evidence in this case tending to indicate that the merchandise was exported during the war, that fact, in itself, is not sufficient to excuse compliance with the regulations. There is nothing in the record which proves that the merchandise was sold to the Government or that it consisted of military or naval supplies or equipment for the use of the Armed Forces.

In *Thornley & Pitt a/c Earl Investment Corpn., supra,* the merchandise consisted of road graders, 80 per centum of the value of which was claimed to be free as American goods returned. No certificate of exportation was filed, but plaintiff contended that the filing thereof was impossible, since no records were kept of the exportation of military goods pursuant to 15 C.F.R., section 30.46, which provided that no export declarations were required for the shipment of military and naval supplies and equipment for the use of the United States military or naval forces abroad. The court held (p. 145):

> * * * without evidence as to the date or dates of exportation, it is impossible to determine whether the provisions of the cited regulation operated to effect the instant transaction. Neither may it be inferred from the proof here adduced, to the effect that military cargo and military vessels were cleared without detailed description or the filing of an exportation declaration, that the involved motor graders were military or naval supplies or equipment for the use of the United States military or naval forces abroad.

The situation in the instant case is similar to that in *J. F. Goldkamp & Co.* v. *United States*, 38 Cust. Ct. 376, C.D. 1890, which involved pipe couplings and gaskets, purchased after the war in Italy as war surplus. The court said (p. 384):

> While we recognize that it might be impossible to obtain a certificate of exportation covering merchandise shipped as military supplies to American forces abroad during the war, in the instant case, no evidence of exportation has been presented nor has plaintiff established that this material was actually exported during the war as military supplies. The proof offered, in lieu of a certificate of exportation, consists merely of some facts from which an inference

in support of plaintiff's position might be drawn, that is, that, since this material was of the kind used by invasion troops and was purchased after the war in Italy from an individual who represented it as war surplus and showed the purchaser a catalog, published by a company said to be an Italian agency to which war surplus had been transferred, which catalog may have listed this material as war surplus, said material must have been exported during the war as military supplies for the use of American Armed Forces abroad. This inference is not justified by the evidence and may not be accepted in lieu of a certificate of exportation.

Likewise, the evidence in the instant case is insufficient to prove impossibility of compliance with the regulations and may not be accepted in lieu of a certificate of exportation.

Furthermore, the evidence does not establish that drawback had not been claimed or paid when the articles were exported from the United States. Mr. Sweeney testified that most of the packing lists read "Alcoa" or "Reynolds Metal" and Mr. Duffy stated that, in 1943, the Reynolds Metal Co. filed drawback claims on bauxite, from which aluminum is made. Since the dates of exportation of this merchandise are unknown, it may well be that such part of it as was manufactured by Reynolds was exported in 1943 with benefit of drawback. The statement that Reynolds never filed drawback claims in connection with merchandise sold to the Government is immaterial, since there is no proof that this merchandise was sold to the Government. There is no evidence whatever as to whether or not drawback was claimed or paid on the merchandise manufactured by Alcoa.

Where merchandise is of American origin returned to the United States without having been advanced in value or improved in condition while abroad, but where the record is insufficient to establish whether or not drawback was allowed on exportation, paragraph 1615 (f), *supra*, provides that the duty assessed shall equal the estimated drawback which would be allowable if the merchandise used in the reimported article were dutiable or taxable at the rate applicable on the date of importation, but, in no case, more than the duty and tax that would apply if the article were originally imported. In the instant case, however, there is nothing in the record to indicate that duty was assessed in an amount greater than that provided by the statute. The collector's report on the protest reads:

A portion of the merchandise herein was of foreign origin. The balance was domestic, but manufactured by U.S. firms, which have established drawback rates. In absence of proof that drawback was not claimed upon exportation, duty equal to drawback was assessed on liquidation.

For the reasons stated, the protest herein is overruled. Judgment will be rendered accordingly.